WESTARK PRODUCTION CREDIT ASS'N
v. FIDELITY & DEPOSIT CO. OF
MARYLAND.

Civ. 967.

United States District Court
W. D. Arkansas, Fort Smith Division.

Sept. 19, 1951.

G. V. Head, Marion W. Hazel, both of St. Louis, Mo., for plaintiff.

Daily & Woods, Fort Smith, Ark., Walther, Hecker, Walther & Barnard, St. Louis, Mo., for defendant.

JOHN E. MILLER, District Judge.

On July 30, 1951, the plaintiff filed its complaint at law in the Sebastian Circuit Court, Fort Smith District, seeking to recover of the defendant a judgment in excess of $3,000, with interest thereon, on a bond executed by the defendant in which it agreed to pay to the plaintiff any financial loss through any dishonest, fraudulent or criminal act of any employee of the plain-

tiff or through the failure of any such employee properly and faithfully to perform the duties imposed upon such employee by law or rules and regulations applicable thereto.

On August 6, 1951, the defendant filed a petition for removal of the cause of action to this court upon the allegation that the controversy is wholly between citizens of different states in that the plaintiff is and was at the time of the commencement of this case a citizen and resident of the State of Arkansas and the defendant is and was a citizen and resident of the State of Maryland, and that more than $3,000, exclusive of interest and costs, is involved.

When the petition for removal was filed the judge of the court wrote the attorneys for the respective parties advising them that he desired that they submit written briefs on the question of whether the cause was removed improvidently and without jurisdiction and entered an order fixing the time for the filing of said briefs. The parties have filed written briefs in support of their respective contentions, and the plaintiff has filed a motion to remand.

■ Title 28 U.S.C.A. § 1441(a) provides: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant * * *." By virtue of 28 U.S.C.A. § 1332(a)(1) the district courts have original jurisdiction of all civil actions where the matter in controversy exceeds $3,000, exclusive of interest and costs, and is between citizens of different states. Thus, since the plaintiff is a citizen of the State of Arkansas, plaintiff's principal office is located in Arkansas: see, 12 U.S.C.A. § 1138, the defendant is a citizen of the State of Maryland, and more than $3,000 is involved, it would appear at first blush that the removal of the case was proper and this court's jurisdiction thereby attached. However, there is a jurisdictional question presented by the last sentence of 12 U.S.C.A. § 1138, which reads as follows: "No district court of the United States shall have

jurisdiction of any action or suit by or against any Production Credit Corporation or Production Credit Association upon the ground that it was incorporated under this chapter or that the United States owns a majority of the stock in it, nor shall any district court of the United States within the farm credit district served by such association or corporation have jurisdiction by removal or otherwise of any suit by or against any such association or corporation except in cases by or against the United States or by or against any officer of the United States and except in cases by or against any receiver of any such corporation or association appointed in accordance with section 1138e of this title."

■■ The defendant does not have an "established right" to have its case tried in a United States District Court. Subject to the limits set forth in the Constitution, the jurisdiction of the inferior federal courts is a matter entirely within the authority of the Congress. As stated by the court in Kline v. Burke Construction Company, 260 U.S. 226, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226: "Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. (Citing cases.) The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. The Mayor [and Aldermen of City of Nashville] v. Cooper, 6 Wall. 247, 252, 18 L.Ed. 851. And the jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part; and if withdrawn without a saving clause all pending cases though cognizable when commenced must fall. The Assessors v. Osbornes, 9 Wall. 567, 575, 19 L.Ed. 748. A right which thus comes into existence only by virtue of an act of Congress, and which may be withdrawn by an act of Congress after its ex-

ercise has begun, cannot well be described as a constitutional right." See, also, Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339.

█ Concerning Production Credit Associations, of which the plaintiff is one, the Congress has provided, "nor shall any district court of the United States within the farm credit district served by such association or corporation have jurisdiction by removal or otherwise of any suit by or against any such association or corporation." This court is within the farm credit district served by plaintiff, so it appears that by plain and unambiguous language the Congress has removed from both the original and removal jurisdiction of this court any suit by or against the plaintiff, with certain exceptions not here applicable.

In view of the unambiguous language used, the court does not believe that it should resort to the legislative history of the act as an aid in construing it, but, in deference to the contentions of the defendant, which are most earnestly urged, and since it appears that this particular provision of the statute has not been considered in any reported case, the court has investigated and examined the legislative history.

The Farm Credit Act of 1933, Act June 16, 1933, came before the House of Representatives as H.R. 5790 of the 73rd Congress on May 31, 1933. The House of Representatives resolved itself into the Committee of the Whole House on the State of the Union for the consideration of the bill. By unanimous consent the first reading of the bill was dispensed with and general debate was begun. Vol. 77, Part 5, Congressional Record, p. 4685, of the 73rd Congress. The section here involved appeared in the bill as Sec. 60, and at that time read as follows: "Sec. 60. The Central Bank for Cooperatives, and the Production Credit Corporations, the Production Credit Associations, and the Banks for Cooperatives, organized under this act, shall have succession until dissolved in accordance with this or any other act of Congress; shall have power to sue and be sued in any court, to adopt and use a corporate seal, to make contracts, to acquire, hold, and dispose of real and personal property necessary and incident to the conduct of their business, to prescribe fees and charges (which in any case shall be subject to the rules and regulations prescribed by the governor) for loans and other services; and shall have such other powers necessary and incident to carrying out their powers and duties under this or any other act of Congress as may be provided by the governor in their charters or in any amendments thereto. Each such bank, association, or corporation shall, for the purposes of jurisdiction, be deemed a citizen of the State or district within which its principal office is located." During general debate Congressman Gilchrist after discussing certain other sections of the bill referred to the provision, in the following language: "Under the language of the first three lines on page 26 full jurisdiction is given to Federal courts to handle litigation that may arise as between the corporations which we are now chartering and farmers or other litigants." He then stated that it was very unsatisfactory to many citizens to compel them to attend federal court and that "a feeling has arisen that the common man is further forgotten there." He advised that at the proper time he would present an amendment that would preserve the right of the local organizations and local citizens to have redress in the State courts. Page 4696 of the Congressional Record, supra.

Later when Sec. 60 of the bill was reached for amendment, the congressman offered the following amendment: "No district court of the United States shall have jurisdiction of any action or suit by or against any production credit corporation or production credit association upon the ground that it was incorporated under this act, or that the United States owns a majority of the stock in it; nor shall any district court of the United States within the land-bank district served by such association or corporation have jurisdiction, by removal or otherwise, of any suit by or against any such association or corporation, except in cases by or against the United:

States or by or against any officer of the United States, and except in cases of winding up such bank, association or corporation." The amendment was adopted without further debate or discussion. Page 4707 of the Congressional Record, supra.

The House proceeded to pass the bill as amended and it went to the Senate and was there referred to the Committee on Banking and Currency, which committee reported the bill back to the Senate with certain proposed amendments. One of the amendments proposed was to Sec. 60, as amended by the House of Representatives. The amendment proposed by the Committee on Banking and Currency of the Senate and adopted by the Senate was that after the word "cases" on page 26, line 11 of the then bill that the words "for winding up such bank, association or corporation" be stricken and in lieu thereof the words "by or against any receiver of any such corporation or association appointed in accordance with section 65" be inserted. There was no debate in the Senate on the proposed amendment and it was adopted without discussion. See, Congressional Record, Vol. 77, Part 6, pp. 5521, 5522, of the 73rd Congress. In other words, the only change made by the Senate in Sec. 60 of the bill was the amendment referred to above.

The Senate amended the bill in other respects and when it was reported to the House of Representatives in its amended form the bill was sent to conference. The conference agreed to accept the Senate amendment hereinbefore referred to and made disposition of the other Senate amendments in such a manner that the conference report was adopted by both the House and the Senate and the bill thus became the Farm Credit Act of 1933.

Defendant contends "that Congress never intended to deprive a citizen of Maryland of its right of removal in a suit against it where it elected to bring the case into the federal court. The only purpose of the last paragraph of Section 1138 was to provide that farmers in suits on their notes which they gave at the time they borrowed money from the Agricultural Association, be entitled to trial in local state courts at a place convenient to the parties and so as not to require a farmer to go to a federal court at a distance from his home with attendant expenses." Even if it could be said that the remarks of Congressman Gilchrist represent the congressional purpose in adopting the amendment, still the method decided upon to achieve that purpose was to deprive district courts within the farm credit district of original and removal jurisdiction "of any suit by or against" Production Credit Corporations or Associations.

As stated above, the court does not believe that it should go behind the language of the Act, but if that be done, the legislative history in no wise indicates a congressional intent other than that implicit in the plain language of 12 U.S.C.A. § 1138.

■■ Defendant also calls attention to Title 28 U.S.C.A. § 1352, which provides that the district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States. Concerning the necessity for this provision, inserted in the 1948 revision of Title 28, the Reviser's Notes state, "In the absence of this new provision, such actions could not be maintained except by the United States, where the amount and other jurisdictional requisites did not exist." As the court views the matter, there is no inconsistency in Sec. 1352, Sec. 1332, granting jurisdiction in diversity cases, Sec. 1441, governing actions removable generally, all in 28 U.S.C.A., and Sec. 1138 of 12 U.S.C.A. The three sections referred to Title 28 involve original and removal jurisdiction generally, whereas Sec. 1138 of Title 12 specifically deprives this court of jurisdiction of a suit such as here involved. Since the Congress has complete authority over the jurisdiction of United States District Courts, this court sees no valid objection to the Congress restricting or removing jurisdiction in certain instances or under certain circumstances, which, but for the specific congressional action in that regard, would otherwise exist under general jurisdictional grants.

■■ The court raised the jurisdictional question prior to the filing of a motion

to remand because it is the duty of the court to ask and answer for itself the question whether it has jurisdiction, Vol. 2 Cyclopedia of Fed.Proc. (3rd Ed.) Sec. 3.144, and where it appears that the court lacks jurisdiction of a removed case it is its duty to remand the case. 28 U.S.C.A. § 1447(c).

The court is of the opinion that it does not have jurisdiction of the subject matter of this case, and an order sustaining the motion to remand and remanding the case should be entered.